IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

CENTER FOR BIOLOGICAL
DIVERSITY, ALABAMA CENTER
FOR SUSTAINABLE ENERGY d/b/a
ENERGY ALABAMA, FRIENDS OF
THE EARTH, GASP, and SOUTHERN
ALLIANCE FOR CLEAN ENERGY,
Plaintiffs,

v.     No. 3:18-cv-01446-LCB

TENNESSEE VALLEY AUTHORITY,
Defendant.

**REPLY BRIEF IN FURTHER SUPPORT OF TVA'S MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

David D. Ayliffe
Associate General Counsel
Frances Regina Koho, Attorney
Steven C. Chin, Attorney
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2410
frkoho@tva.gov

## I. This Court Should Disregard the Declarations Submitted by Plaintiffs Because TVA Brings a Facial Challenge to Standing.

Standing may be challenged in two ways. In a "facial" challenge, a court looks "merely . . . to the sufficiency of the allegations in the complaint because they are presumed to be true," whereas in a "factual" challenge, a court looks at evidentiary material submitted by the parties. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Because TVA challenges Plaintiffs' standing prior to answering[1] and without submitting any evidentiary materials, it has mounted a "facial attack," which requires this Court to determine whether Plaintiffs have standing based on the Complaint's allegations alone. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).[2] Thus, the Court should disregard the declarations (Docs. 19-1, 19-2, 19-3) attached to their response. *E.g.*, *Johnson v. Whitman*, No. 6:14-cv-00704, 2014 WL 2591143, at *2 n.2 (N.D. Ala. June 9, 2014) (declining to consider evidentiary materials where

---

[1]  A factual evaluation "cannot occur until plaintiff's allegations have been controverted." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977).

[2]  As already explained (*see* Doc. 15 at 5-6 n.3), TVA's reliance on documents referenced in Plaintiffs' Complaint does not convert this challenge from a facial to a factual one, nor does TVA's reference to documents subject to judicial notice. *See also Menna v. Radmanesh*, No. CV 14-355-R (MAN), 2014 WL 6892724, at *7 (C.D. Cal. Oct. 7, 2014) (challenge to standing was a facial one because defendants based motion on complaint's allegations and documents subject to judicial notice).

defendants mounted facial attack to standing); *accord RFAR Grp., LLC v. Epiar, Inc.*, No. 3:11-cv-03432, 2012 WL 2344346, at *4 (N.D. Tex. June 20, 2012).

## II.   Plaintiffs' Factual Allegations Cannot Establish Article III Standing.[3]

Contrary to Plaintiffs' contention that they "need not prove their standing now" (Doc. 19 at 3 n.1), Plaintiffs *always* have "[t]he burden . . . to produce facts sufficient to support [their] standing." *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009). And although they are correct that this Court should "make reasonable inferences in [their] favor," it is not "required to draw Plaintiffs' inference[s]" for them. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Plaintiffs, a consortium of environmental groups, may bring suit only if their "members would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Article III's first element—injury-in-fact—requires an organizational plaintiff to "make specific allegations establishing that at least one identified member had suffered or

---

[3]   Because Plaintiffs provide minimal responses to TVA's "zone of interest" and prudential standing arguments, TVA's reply focuses on Article III and rests on the other two arguments in its initial brief. (*See* Doc. 15 at 21-28.) However, as to prudential standing, Plaintiffs erroneously claim they are "entitled" to bring this suit "irrespective of whether there might also be other means to address their concerns." (Doc. 19 at 22-23, 36.) The single case they cite, *Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1281-82 (11th Cir. 2015), simply rejected a claim that a lawsuit should have been brought under § 402, rather than § 404, of the Clean Water Act for *Article III*, not prudential, purposes.

2

would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Even in the NEPA context, injury-in-fact "is a hard floor of Article III jurisdiction that cannot be removed by statute. Without an imminent threat of injury traceable to the challenged action, that floor stands as a ceiling." *National Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15 (D.C. Cir. 2011). And "[t]he Supreme Court has repeatedly held that an alleged harm is too speculative . . . when [it] lies at the end of a highly attenuated chain of possibilities." *South Carolina v. United States*, __ F.3d __, 2019 WL 124267, at *5 (4th Cir. Jan. 8, 2019).

Article III's other elements—causation and redressability—dictate that "the injury . . . be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fla. Family Policy Council*, 561 F.3d at 1253. Although courts have described these two prongs as somewhat "relaxed" in NEPA cases, "Article III's requirements may not be relaxed to the point of oblivion." *Ecosys. Inv. Partners v. Crosby Dredging, LLC*, 729 F. App'x 287, 291 (5th Cir. 2018).

### A. Plaintiffs' alleged injury is too speculative to establish Article III standing.

Plaintiffs' injury-in-fact arguments are largely based on declarations not properly before this Court, and their few arguments based on the Complaint's allegations are deficient on their face.

3

Plaintiffs' alleged substantive injury[4] is that TVA's rate change disincentivizes consumers' reliance on solar panels and related energy efficiency measures, which will cause TVA to increase reliance on "fossil fuel generation," which will *then* increase pollution. (Compl. ¶ 11.) Plaintiffs allege, at a high level of generality, that their members, who live somewhere in TVA's seven-state service territory, will be adversely affected by this pollution. (*Id.* ¶¶ 9, 11, 13, 15, 17.) Even at the pleading stage, this is insufficient. Plaintiffs must "make specific allegations establishing that at least one identified member had suffered or would suffer harm," *Earth Island Inst.*, 555 U.S. at 498, and they must allege facts demonstrating "a substantial probability that local conditions will be adversely affected." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). This is especially important when the challenged government action, like TVA's rate change, does not involve a particular site, but a policy with broad application and geographic impact. *See Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 667 (D.C. Cir. 1996) (en banc).

Plaintiffs' allegations fail because they contain no facts about individual members' locations or the imminence of their alleged injuries. Without a "tangible

---

[4]     Plaintiffs stress that their injury is "procedural," but even in a NEPA case, there must be "some connection between the alleged procedural injury and a substantive injury that would otherwise confer Article III standing. Without such a nexus, the procedural injury doctrine could swallow Article III standing." *United Transp. Union v. ICC*, 891 F.2d 908, 918 (D.C. Cir. 1989).

personal injury," Plaintiffs are merely suing "to enforce [their] and every other citizen's interest in proper application of [NEPA]." *Ecosys. Inv. Partners*, 729 F. App'x at 292. "[O]rganizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process" cannot establish standing. *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972).

In addition, Plaintiffs' allegations are entirely conjectural. The linchpin of their alleged injury is that TVA's dis-incentivizing of solar use/energy efficiency measures will increase production of "dirty electricity." (Compl. ¶ 1.) Plaintiffs' own allegations belie the plausibility of this outcome. The Complaint states that only "a small number of TVA customers" invest in distributed energy resources ("DER"), such as solar panels (*id.* ¶ 34); that "less than 0.4% of electricity" in TVA's service territory is generated from these sources (*id.* ¶ 35); that less than half of TVA's electricity is generated from objectionable sources (*id.* ¶ 28); and that TVA "is faced with 'flat or even declining' need for power" (*id.* ¶ 58). *Assuming* the veracity of these allegations as is required, it would require a leap of logic for this Court to infer that TVA would necessarily use its fossil plants, less than half of its generation mix, to such an extent that Plaintiffs' parade of horribles is likely. Just as likely is an increased reliance on emission-free nuclear and hydro generation or on a diverse mix of generation sources, which, coupled with a flat or declining need for power, would result in static or reduced emissions. Of course,

these outcomes hinge on a host of unpredictable factors, including weather patterns and third-party choices. Plaintiffs include no factual allegations to allow this Court to infer that their conjectural outcome is even plausible, much less likely.

Plaintiffs cannot simply "set[] forth facts from which [this Court] could *imagine* an injury sufficient to satisfy Article III's standing requirements," as courts are prohibited from "imagin[ing] or piec[ing] together an injury sufficient to give [a] plaintiff standing when it has demonstrated none." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005). This is exactly what Plaintiffs ask this Court to do. Thus, they have failed to allege a plausible injury-in-fact.

### B. Plaintiffs fail to link TVA's rate change to their alleged harms.

Plaintiffs' attempt to demonstrate standing by distinguishing *Bentsen*, a case on all fours with this one, falls short.[5] Rather than a "reasonable connection," *Bentsen* counsels that Plaintiffs must show it is "substantially probable" that the rate change will cause their injury. 94 F.3d at 663.[6] As noted in TVA's initial brief

---

[5]  Plaintiffs' claim that *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973) ("*SCRAP*") articulates the necessary showing on a motion to dismiss is not well-taken. *SCRAP* has long been called into question and narrowed to the point of invalidation. *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990) ("[*SCRAP*] surely went to the very outer limit of the law."); *Lujan v. Defenders of Wildlife*, 497 U.S. 555, 589 (1992) ("*SCRAP*['s] . . . expansive expression of what would suffice for § 702 review . . . has never since been emulated by this Court[.]").

[6]  Plaintiffs claim that they need only show a "reasonable connection" between the rate change and their injury, but *Lujan* reiterates that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" and therefore is not a

6

(Doc. 15 at 17-19), Plaintiffs provide little factual support for any of the links in their speculative chain of causation and fail to show that each link, much less the whole chain, is "substantially probable." And their additional claim that *Bentsen* is distinguishable because there are fewer actors in the causation chain here is unconvincing. TVA is not the only actor necessary to produce Plaintiffs' alleged injury; rather, the actions of TVA's customers, local power producers in seven states, and external market forces that determine the price of DER installation and electric power prices must all align to arrive at Plaintiffs' anticipated harm. And Plaintiffs *admit* that their first alleged link of causation—that the rate change will cause residents not to adopt solar power or energy efficiency measures—relies on the independent actions of third parties. (Doc. 19 at 28-29.) This destroys the chain of causation. *See, e.g.*, *Lujan*, 504 U.S. at 562; *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478-79 (D.C. Cir. 2009) (causal link from agency's oil leases to global warming relied on multiple intervening actors); *Bell v. Bonneville Power Admin.*, 340 F.3d 945, 951 (9th Cir. 2003) (chain from program that supplied large customer with less power to environmental injury too speculative).

---

"mere pleading requirement[]," but "an indispensible part of plaintiff's case." 504 U.S. at 560-61.

Plaintiffs try to avoid this result by arguing that TVA acknowledged that dis-incentivizing customer adoption of DER was the primary reason for the rate change. But the stated reason in the EA for the rate change was *not* to disincentive DER development, but to dis-incentivize DER cost-shifting and equitably apportion the costs of providing power to all residents of the Tennessee Valley while still "continuing to provide an incentive for DER investment." (Doc. 15-1 at 48; *id.* at 115, Resp. 7 ("Due to the costs of installing [DER] systems, customers installing DER tend to have above-average incomes," . . . [and these households typically benefit] at the expense of less well-off households.").) Contrast this with Plaintiffs' mischaracterization: "TVA has made absolutely clear that addressing growth in DER development is '*a primary reason why TVA has proposed a rate change.*'" (Doc. 19 at 29; *see also* Compl. ¶ 49 (rate change's "intended purpose [is] to reduce DER deployment").) While the showing for causation is relaxed on a motion to dismiss, the Court is under no obligation to accept a mischaracterization couched as a fact when the truth can be discerned from a public document.

Plaintiffs' next link is equally weak because it is based on this imaginary disincentive. Plaintiffs argue that because DER implementation will decrease, TVA will necessarily increase reliance on fossil fuel. As noted in section II.A., Plaintiffs' own factual allegations refute this. *See also* TVA 10-K at 49, *available at* http://www.snl.com/irw/Doc/4063363/Index?did=48033155 (trend of essentially

8

flat energy demand likely to continue). Thus, the assumption that TVA will be burning more fossil fuel is simply wrong.[7] The Court should not accept Plaintiffs' invitation to "presum[e] that general allegations embrace those specific facts that are necessary to support the claim," when that general allegation is demonstrably false. *Lujan*, 504 U.S. at 561; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the [allegations'] sufficiency."), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

Plaintiffs have not alleged facts showing a direct and definite link from TVA's rate change to environmental harm; thus, they have not made the showing necessary to establish causation.

### C. Plaintiffs' requested relief would not redress their injury.

Redressability fails for the same reasons. Where a party's relief "depends on the unfettered choices made by independent actors not before the courts and whose

---

[7]  *Accord* 10-K at 15 (noting that "combined participation for all . . . renewable solutions is approximately 450 MW . . . with nearly 134 MW of additional approved capacity" and that TVA contracts for approximately 1,215 MW of operating wind capacity); *id.* at 16 (discussing current DER work and other analyses that assist "in placing utility-scale solar in furtherance of the Integrated Resource Plan recommendations . . . to meet the needs of LPCs"); *id.* at 20 (discussing research and modeling efforts on existing and expected solar power deployments); *id.* at 56 (increased purchase power expenses "driven by changes in the mix of generation resources purchased, including solar and natural gas").

exercise of broad and legitimate discretion the courts cannot presume either to control or predict," the redressability prong of standing is not satisfied. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (Kennedy, J.); *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 151-52 (D.D.C. 2011) (no standing to challenge NEPA analysis of power plant in part because injunction against DOE funding unlikely to impact utility's independent actions in constructing it); *Reudiger v. U.S Forest Serv.*, 427 F. Supp. 2d 974, 983 (D. Or. 2005) (enjoining Forest Service from issuing helicopter landing permit would not redress injury because increased environmental impacts resulting from logging would still occur).

## CONCLUSION

For the reasons stated here and in TVA's initial brief, Plaintiffs' Complaint should be dismissed because they have failed to establish standing.

Respectfully submitted,

s/Frances Regina Koho
David D. Ayliffe (TN BPR 024297)
Associate General Counsel
Frances Regina Koho (TN BPR 029261)
Steven C. Chin (TN BPR 030011)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2410
frkoho@tva.gov

Attorneys for Tennessee Valley Authority

82362921

## CERTIFICATE OF SERVICE

On January 21, 2019, I electronically filed this document through the ECF system, which will send a notice of electronic filing to:

R. David McDowell, Esq.
Law Office of R. David McDowell
121 Jefferson Street N.
Huntsville, Alabama 35801
Telephone 256.564.7474
RDavidMcDowell@gmail.com

Howard M. Crystal, Esq.
Anchun Jean Su, Esq.
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C. 20005
Telephone 202.849.8399
hcrystal@biologicaldiversity.org
jsu@biologicaldiversity.org

*Attorneys for Plaintiffs*

*s/Frances Regina Koho*
*Attorney for Tennessee Valley Authority*