FILED

2019 Aug-26  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No.:  3:18-cv-1446-LCB |
| v. | ) ) | |
| TENNESSEE VALLEY AUTHORITY | ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiffs, Center for Biological Diversity, Alabama Center for Sustainable Energy, Friends of the Earth, GASP, and Southern Alliance for Clean Energy, filed this lawsuit on behalf of their members alleging that the defendant, Tennessee Valley Authority ("TVA"), violated the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*, ("NEPA"), when it enacted a certain set of rate changes in 2018.  TVA has filed a motion to dismiss all claims pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.  According to TVA, the plaintiffs lack standing to bring the asserted claims.  TVA also alleges that, even if the plaintiffs had standing, dismissal is still proper because, it says, the plaintiffs fail to state a claim for which relief can be granted.  The motion has been fully briefed, and the Court has conducted a hearing on the matter.  For the reasons stated below, the motion is due to be **DENIED**.

## I. Background

TVA is a constitutionally authorized executive branch corporate agency and instrumentality of the United States created by the TVA Act of 1933, 16 U.S.C. §§ 831, et seq.  One of TVA's statutory objectives is to provide adequate, affordable, and reliable electricity to more than nine million people in TVA's seven-state service area.  TVA generates electricity through a variety of methods that it then sells to 154 municipal and cooperative local power companies ("LPCs"), which then distribute it to residential, commercial, industrial, and governmental customers.  TVA also sells electricity directly to some industrial and governmental customers with large or unusual power demands.  The plaintiffs are environmental groups whose thousands of members live in the areas served by TVA.

In 2018, TVA enacted the new rate structure for its provision of electricity to businesses and individual households.  TVA's rate change reduced the "wholesale Standard Service energy rate" and added a "grid-access charge."  (Doc. 15, at 8).  According to TVA, the purpose of the grid-access charge was to ensure that all customers, including customers who use distributed energy resources ("DERs"), like rooftop solar panels, in addition to power from TVA's grid, contributed to the maintenance of TVA's infrastructure.  TVA's rate change also lowered energy rates for large commercial customers and increased rates for certain other customers.  TVA also lowered the rate it paid to customers who generated their

own electricity through distributed generation ("DG") systems like rooftop solar panels. According to TVA, the 2018 rate change would not change the amount of revenue collected by TVA nor would it alter any of its operations or require any changes to its generation or transmission systems. TVA stated that its purpose in enacting the rate change was to "better align its wholesale rates with underlying costs." (Doc. 15, at 7).

The plaintiffs have a different interpretation of the 2018 rate change. According to the plaintiffs, TVA's rate change was implemented as a way to discourage both businesses and individual household from adopting DERs, thus making them more reliant on electricity generated by TVA. The plaintiffs allege that the rate change disincentivizes the adoption of DER, which will lead to TVA burning more fossil fuels to generate power, which will then lead to environmental damage in the areas where the plaintiffs' members live.

Before enacting the rate change that is the subject of this litigation, TVA conducted an environmental assessment ("EA") pursuant to NEPA in order to assess the probable environmental consequences of its actions. TVA stated that it received 1,741 comment submissions from the public and other stakeholders regarding the probable environmental consequences of its proposed rate change. After completing the study, TVA determined that its proposed rate change would not significantly impact the environment and issued a finding of no significant

impact ("FONSI").  Because it found that the proposed rate change would not significantly affect the environment, TVA did not prepare the more intensive Environmental Impact Statement.[1]

## II. Plaintiffs' Complaint

In their complaint, the plaintiffs allege that TVA's EA did not meaningfully assess the environmental impacts of the 2018 rate change.  According to the plaintiffs, TVA violated NEPA by enacting the rate change based on an allegedly deficient EA in a manner that was arbitrary and capricious and contrary to law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.[2]  The plaintiffs also allege that TVA violated NEPA by failing to consider the environmental impacts of its rate change along with the reduction in the DG rate paid to customers who generate their own electricity.  Additionally, the plaintiffs claim that the 2018 rate change, "(a) 'may establish a precedent for future action with significant effects'; (b) will have 'highly controversial' and 'highly uncertain'

---

[1] NEPA requires a federal agency to prepare the most intensive study, an Environmental Impact Statement ("EIS"), only when a major federal action is expected to "significantly" affect the quality of the human environment. 42 U.S.C. § 4332(C). An agency may prepare an EA for a proposed action in order to determine whether or not an EIS is needed. 40 C.F.R. §§ 1508.9, 1501.3, 1501.4(b) & (c). If, based on the EA, the agency determines that the impacts of the proposed action will not significantly affect the environment, then it issues a FONSI and an EIS is not required. 40 C.F.R. § 1501.4(c) & (e); 40 C.F.R. § 1508.13; *see generally Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 756-58 (2004). "[T]he decision not to prepare an EIS is left to the 'informed discretion' of the agency." *Providence Rd. Cmty. Ass'n v. EPA*, 683 F.2d 80, 82 (4th Cir. 1982) (*quoting Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)).

[2] Because NEPA does not have its own private right of action, NEPA suits are brought under the APA. *See, e.g., Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012) (noting that the APA "provides for judicial review of federal agency actions and allows federal courts to enjoin authorities of the United States government").

effects; (c) is related to other actions with cumulatively significant impacts; and/or (d) 'threatens a violation' of the TVA Act, 40 C.F.R. § 1508.27…." (Doc. 1, at 24-25). Based on those assertions, the plaintiffs claim that TVA was required to conduct an EIS and, by failing to do so, violated NEPA. Finally, the plaintiffs claim that TVA violated NEPA by enacting the 2018 rate change before completing its 2019 Integrated Resource Plan ("IRP"). According to the plaintiffs, the 2019 IRP will address for the first time the availability and use of DER, the effects of power production on the environment, and how DER should be considered in TVA's planning. By enacting the rate change before that IRP was complete, the plaintiffs say, TVA violated NEPA.

According to the plaintiffs, TVA's alleged failure to comply with NEPA will ultimately harm them by dis-incentivizing investments in DER, which, in turn, will increase reliance on TVA-generated power. Plaintiffs further allege that this increased reliance will cause TVA to burn more fossil fuels which, in turn, will harm the environment in the areas where they live. The plaintiffs have asked this Court to declare that TVA has violated NEPA and the APA; to set aside and remand the FONSI as well as TVA's 2018 rate change; and to order that TVA prepare an EIS regarding the rate change.

## III.    Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'"  Id. at 679 (*quoting*, in part, Fed. R. Civ. P. 8(a)(2)).  Thus, the Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*citing Bell Atlantic v. Twombly*, 550 U.S. 544, 567 (2007)).

## IV.   TVA's Motion to Dismiss

### a.  Article III Standing

In its motion to dismiss, TVA first argues that all of plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1), Fed. R. Civ. P., because, it says, the plaintiffs lack constitutional standing.[3]  The Supreme Court has stated that in order to meet the standing requirement of Article III of the United States Constitution, a plaintiff must establish the following:

(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) the injury is fairly traceable to the challenged action of the defendant; and

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  "The party invoking federal jurisdiction bears the burden of establishing these elements.  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

---

[3] Dismissal for lack of standing is treated as dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008)(citing cases).

(1992)(internal citations omitted).  TVA argues that the plaintiffs have failed to sufficiently allege facts to support each of the above-mentioned prongs.

First, TVA claims that plaintiffs failed to demonstrate injury in fact because, TVA says, their claims are conjectural and speculative.  TVA points out that the complaint's "general assertions of injury" fail to provide any particularized allegation as to an increased risk any of its members face as a result of the rate change.  (Doc. 15, at 12).  TVA points out that the complaint does not allege that any particular member of the plaintiffs' organizations will not install solar panels or that any members who have adopted DER have actually lost money.  Similarly, TVA argues that the plaintiffs' allegations regarding causation, i.e., that their injuries are fairly traceable to TVA's actions, and their allegations that their injuries will likely be redressed by a favorable decision, are also speculative and conjectural.

However, the Supreme Court has held: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan*, 504 U.S. at 561, quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).  In their complaint, the plaintiffs made general allegations that TVA's rate change would ultimately harm them by damaging the environment.  For example, The Center for

Biological Diversity alleged that its members "who live in TVA's service territory are harmed by TVA's failure to comply with NEPA in imposing the Anti-Solar Rate Changes because these changes will both dis-incentivize investments in rooftop solar systems and reduce the benefits of energy efficiency or other measures that would reduce electricity generated from TVA's polluting energy sources. Those polluting energy sources, in turn, release toxic pollutants and greenhouse gas emissions that endanger the environment and public health, thus further harming Center members and their ability to enjoy healthy air and a stable climate." (Doc. 1, at 3-4).

While it is certainly true that the plaintiffs' claims require speculation, that is not necessarily fatal at the motion to dismiss stage. In support of its argument that TVA's case should be dismissed because the plaintiffs' allegations are speculative and conjectural, TVA cites to an opinion from the United States Court of Appeals for the D.C. Circuit, *Florida Audubon Soc'y v. Bentsen*, 94 F. 3d 658 (D.C. Cir. 1996)(en banc). *Bentsen* involved a similar factual scenario in which the Treasury Department expanded certain tax credits which, the plaintiffs claimed, would increase the demand for ethanol. According to the *Bentsen* plaintiffs, the increased demand for ethanol would incentivize farmers to grow more corn which would ultimately lead to pollution and the resulting environmental damage caused by the pollution. Like TVA here, the Treasury Department in *Bentsen* did not conduct an

EIS regarding their expansion of the tax credit.  The D.C. Circuit held that the plaintiffs' lacked standing.  In its analysis of the plaintiffs' claim, the court held that "[s]uch a protracted chain of causation fails both because of the uncertainty of several individual links and because of the number of speculative links that must hold for the chain to connect the challenged acts to the asserted particularized injury."  *Id. at* 670.

However, *Bentsen* is distinguishable because the court in that case was reviewing the district court's decision to grant summary judgment.  Thus, the standard of review was different in *Bentsen* than it is in the present case.  Under the standard that this Court must follow in ruling on a motion to dismiss, the plaintiffs have alleged "general allegations [that] embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561.  As noted above, the plaintiffs alleged that their members will ultimately be harmed by environmental damage because of TVA's alleged failure to comply with the procedural requirements of NEPA.  The Eleventh Circuit has held: "When the plaintiff complains of an injury in fact that is procedural in nature, the plaintiff must demonstrate that 'the procedures in question are designed to protect some threatened concrete interest of his.'  *[Lujan v. Defenders of Wildlife*, 504 U.S.]* at 573 n. 8, 112 S.Ct. at 2143 n. 8.  Our view of *Lujan* is that the question of whether a plaintiff has a procedural right is inseparable from the requirement of a concrete

injury." *Sierra Club v. Johnson*, 436 F. 3d 1269, 1276-77 (11th Cir. 2006).  Thus, the Court finds that the plaintiffs have alleged enough at this stage of the proceedings to demonstrate an injury in fact.

Similarly, the Court finds that the plaintiffs have alleged that their procedural injury and, ultimately, the alleged impending environmental damage are fairly traceable to TVA's new rate structure.  Of course, the plaintiffs will ultimately have to offer evidence to prove each link in their alleged chain of causation.  However, at this early stage, the Court must accept their allegations as true.  In doing so, the Court finds that the complaint alleges sufficient facts that, if true, would demonstrate the requisite causation.

Finally, the Court finds that the complaint sufficiently pleads the third prong necessary for standing, i.e., that the injury can be redressed by a favorable decision.  The Supreme Court put forth the following hypothetical scenario in *Lujan*:

> Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

*Lujan*, 504 U.S. at 572 n. 7.  This Court finds that the plaintiffs' claims in the present case are similar.  Accordingly, the plaintiffs have alleged an injury that is

redressable for purposes of standing in a case involving allegations that a government entity has failed to comply with applicable environmental laws.

After reviewing the briefs and hearing the arguments of counsel at a motion hearing, this Court finds that the plaintiffs' allegations, if true, would demonstrate that they have Article III standing. Accordingly, TVA's motion to dismiss on this ground is due to be denied.

### b. Prudential Standing

TVA also argues that, even if the plaintiffs have Article III standing, they lack prudential standing. The Supreme Court has held:

> Additional prudential limitations on standing may exist even though the Article III requirements are met because "the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–1608, 60 L.Ed.2d 66 (1979). One of these prudential limits on standing is that a litigant must normally assert his own legal interests rather than those of third parties. *See Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S. Ct. 2965, 2970, 86 L. Ed. 2d 628 (1985). Additionally, the Eleventh Circuit has held:

> "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181,

12

120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *[Sierra Club v. ]Tenn. Valley Auth.,* 430 F.3d [1337,] 1344[ (11th Cir. 2005)]. So long as one party has standing, other parties may remain in the suit without a standing injury. *Clinton v. City of New York*, 524 U.S. 417, 434–36, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998).

*Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006).

TVA argues that the plaintiffs have asserted generalized grievances about pollution and air quality that would be better addressed by other branches of government.  First, the Court notes that nearly all environmental injuries affect a large number of people.  However, the plaintiffs in this case have stated that they have numerous members who live within TVA's service area that will be harmed by TVA's alleged failure to comply with NEPA.  Like the allegations regarding Article III standing, the Court must, at this stage of the litigation, "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan*, 504 U.S. at 561, quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).  Thus, the plaintiffs' complaint sufficiently alleges that their individual members, though not specifically named, will be harmed by TVA's alleged failure to comply with NEPA.

Second, the Court finds that the plaintiffs chosen method of seeking a remedy, i.e., a federal lawsuit in lieu of seeking redress from Congress or the Executive Branch, is valid.  As noted in TVA's motion to dismiss, the APA "provides for judicial review of federal agency actions and allows federal courts to

13

enjoin authorities of the United States government." (Doc. 15, at 2 n. 1)(*citing*

*Citizens for Smart Growth v. Sec'y of Dep't of Transp*., 669 F.3d 1203, 1210 (11th

Cir. 2012). Further, the Court notes that in discussing a case involving NEPA, the

Supreme Court held that it is the role of the courts to "ensure that the agency has

adequately considered and disclosed the environmental impact of its actions and

that its decision is not arbitrary or capricious." *Baltimore Gas & Elec. Co. v. Nat.*

*Res. Def. Council, Inc.*, 462 U.S. 87, 97–98 (1983), *citing Citizens to Preserve*

*Overton Park v. Volpe*, 401 U.S. 402, 415–417 (1971). Thus, it is not improper for

the judiciary to resolve such claims.

TVA's argument is premised on its assertion that, at its core, the plaintiffs'

lawsuit is an attempt to force TVA to take certain actions such as increase its

reliance on solar energy, incentivize DER, and decrease its fossil fuel use. The

Court recognizes that this is the plaintiffs' ultimate goal and that the plaintiffs

could certainly pursue their goal through other branches of government. However,

the plaintiffs have chosen to vindicate a procedural injury in this case, and the

proper method for that vindication is the APA and NEPA. Accordingly, the Court

does not find TVA's argument regarding prudential standing to be persuasive.

### c. NEPA's "Zone of Interests"

Finally, TVA argues that the plaintiffs' claims falls outside of NEPA's

"zone of interests" and are therefore due to be dismissed pursuant to Rule 12(b)(6),

Fed. R. Civ. P.  (Doc. 15, at 23 n. 18).  Under the APA, a NEPA plaintiff must show that "there has been a final agency action adversely affecting [them]," and that, as a result, their "injury falls within the 'zone of interests' of the statutory provision that the plaintiffs] claim[] was violated." *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006).  According to TVA, the plaintiffs' environmental claims are premised on conjecture and extrapolation from the plaintiffs' alleged economic injury.  Therefore, TVA says, the plaintiffs' allegations fall outside of NEPA's scope.

In their response to TVA's motion to dismiss, the plaintiffs concede that resolving their claims will involve economic issues because the agency action at the heart of their grievance is an economic one, i.e. a change in TVA's rate structure.  However, the plaintiffs state that they "are challenging whether, in imposing [the 2018] rate changes on its customers, TVA has complied with NEPA and the APA."  (Doc. 19, at 29).

The Eleventh Circuit has held that "[t]he zone-of-interests test 'is not meant to be especially demanding.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1282 (11th Cir. 2015), *quoting Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).  The plaintiffs have alleged injuries that are ultimately environmental in nature.  In describing NEPA, the Supreme Court has noted:

> NEPA has twin aims. First, it "places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action." *Vermont Yankee[ v. Natural Resources Defense Council, Inc.*, 435 U.S.] 553 [(1976)]. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process. *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 143, 102 S.Ct. 197, 201, 70 L.Ed.2d 298 (1981). Congress in enacting NEPA, however, did not require agencies to elevate environmental concerns over other appropriate considerations. *See Stryckers' Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227, 100 S.Ct. 497, 499, 62 L.Ed.2d 433 (1980) (per curiam). Rather, it required only that the agency take a "hard look" at the environmental consequences before taking a major action. *See Kleppe v. Sierra Club*, 427 U.S. 390, 410, n. 21, 96 S.Ct. 2718, 2730, n. 21, 49 L.Ed.2d 576 (1976).

*Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983).

Thus, plaintiffs' environmental claims bring their case within NEPA's zone of interests, and TVA's motion to dismiss on this basis is due to be denied.

## V. Conclusion

For the foregoing reasons, TVA's motion to dismiss (doc. 14) is **DENIED**.

**DONE** and **ORDERED** August 26, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE